**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                         :

KOBAYASHI VENTURES, LLC,          :     08 CIV. 04450 (LAP)

                                    :

               Plaintiff,     :

                                    :     *Document Filed Electronically*

     -against-              :

                                    :

PAPERTECH INC.,                 :

                                    :

               Defendant.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

### PT PAPERTECH, INC.'S BRIEF IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6), AND IN THE ALTERNATIVE FOR SUMMARY JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 56

---

8905017.7

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

I.    INTRODUCTION ................................................................................... 1

II.   STATEMENT OF FACTS ...................................................................... 2

      A.    Papertech and Champion Entered Into a License Agreement ............... 2

      B.    The License Agreement Was Allegedly Transferred to Kobayashi ..................... 2

      C.    Papertech Terminated the License Agreement in 2000 ........................... 3

      D.    Kobayashi Sued Papertech in December 2007 ....................................... 4

III.  KOBAYASHI FAILED TO STATE A CLAIM AGAINST PAPERTECH.................... 4

      A.    Papertech Meets the Legal Standard for a 12(b)(6) Motion to Dismiss ............... 4

      B.    Kobayashi Made the September 27, 2000 Termination Letter Part of the Record of This Case ................................................................... 5

      C.    No Ongoing License Agreement Exists Between Kobayashi and Papertech ........ 8

      D.    Even If a License Agreement Existed, the Statute of Limitations for Breach of Contract Prevents Kobayashi From Suing Papertech ....................... 12

      1.    The Statute of Limitations Began Running More Than Seven Years Ago Upon the Termination of the License Agreement................................. 12

      2.    At Best, the Statute of Limitations Began Running More Than Seven Years Ago, When Papertech Did Not Report or Pay Royalties........................... 15

      3.    To Allow Kobayashi's Claim to Succeed Circumvents the Purpose of the Statute of Limitations................................................................. 17

IV.   OTHER PROCEDURAL ISSUES ............................................................. 19

V.    CONCLUSION...................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

60223 Trust v. Goldman, Sachs & Co.,
  540 F. Supp. 2d 449, 451 (S.D.N.Y. 2007) ................................................................ 6

Agron v. The Trustees of Columbia University in the City of New York,
  1993 U.S. Dist. LEXIS 4565 (S.D.N.Y. 1993);
  1993 WL 118495 (S.D.N.Y. 1993) ................................................................ 17, 18

Ashfar v. Procon Inc.,
  442 F. Supp. 887, 890 (S.D.N.Y. 1977) ..................................... 12, 13, 14, 15, 17, 19

Bernheim v. Litt,
  79 F.3d 318, 321 (2d Cir. 1996) ................................................................ 2, 4, 5

Boracchia v. Biomet, Inc.,
  2008 U.S. Dist. LEXIS 14025 (N.D. Cal. 2008);
  2008 WL 512721 (N.D. Cal. 2008) ................................................................ 13

Chambers v. Time Warner, Inc.,
  282 F.3d 147, 152 (2d Cir. 2002) ................................................................ 5, 6

Command Cinema Corp. v. VCA Labs, Inc.,
  464 F. Supp. 2d 191, 198 (S.D.N.Y. 2006) ................................................................ 8

Connecticut Indemnity Co. v. 21st Century Transport Co., Inc.,
  2001 U.S. Dist. LEXIS 10795 (E.D.N.Y. 2001); 2001 WL 868340 (E.D.N.Y. 2001)............. 6

Cortec Industries, Inc. v. Sum Holding L.P.,
  949 F.2d 42, 44 (2d Cir. 1991) ................................................................ 6, 7

Ediciones Quiroga, S.L. v. Fall River Music, Inc.,
  1998 U.S. Dist. LEXIS 19039 (S.D.N.Y. 1998);
  1998 WL 851574 (S.D.N.Y. 1998) ................................................................ 14, 15

Ely-Cruikshank, Co., Inc. v. Bank of Montreal,
  81 N.Y.2d 399, 402 (1993) ................................................................ 9, 12, 13, 16, 19

Enervations, Inc. v. Minnesota Mining and Manufacturing Co.,
  380 F.3d 1066, 1067-69 (8th Cir. 2004) ................................................................ 6, 13

International Audiotext Network, Inc. v. American Telephone and Telegraph Co.,
  62 F.3d 69, 72 (2d Cir. 1995) ................................................................ 6

Ives v. Mars Metal Corp.,
  196 N.Y.S. 2d 247, 249 (1960) ................................................................ 10, 11

Levy v. Verizon Information Services, Inc.,
  498 F. Supp. 2d 586, 594 (E.D.N.Y. 2007) ................................................................ 6

Mechanics and Traders' Nat'l Bank of the City of N.Y. v. Winant,
  123 N.Y. 265, 268, 271-72 (1890) ................................................................ 10

*Noah v. L. Daitch & Co.,*
   192 N.Y.S.2d 380, 385 (1959) ............................................................................ 9, 10

*Papasan v. Allain,*
   478 U.S. 265, 286 (1986) ...................................................................................... 5

*Szatmari v. Rosenbaum,*
   490 N.Y.S.2d 97 (1985) ......................................................................................... 9

*U.S. Broadcasting Co. Corp. v. National Broadcasting Co., Inc.,*
   439 F.Supp. 8, 9 (D.C. Mass. 1977) .................................................................... 11

*Wallace v. New York City Dept. of Corrections,*
   1996 U.S. Dist. LEXIS 22368 (E.D.N.Y. 1996);
   1996 WL 586797 (E.D.N.Y. 1996) ........................................................................ 7

*Yak v. Bank Brussels Lambert,*
   252 F.3d 127, 131 (2d Cir. 2001) ......................................................................... 7

**Rules**
Fed. R. Civ. P. 12(b)(5) ................................................................................................ 4
Fed. R. Civ. P. 12(b)(6) ................................................................................. 1, 2, 4, 5, 8
Fed. R. Civ. P. 12(d) ..................................................................................................... 5
Fed. R. Civ. P. 56 ......................................................................................................... 4

**Statutes**
N.Y.C.P.L.R.§ 213(2) ................................................................................................. 12
28 U.S.C. § 1331 ......................................................................................................... 19
28 U.S.C. § 1338(a) .................................................................................................... 19
28 U.S.C. § 1391 ......................................................................................................... 19
28 U.S.C. § 1400(b) .................................................................................................... 19
35 U.S.C. § 281 ........................................................................................................... 19

**Other Authorities**
2 MOORE'S FEDERAL PRACTICE, § 12.34[2] (Matthew Bender 3d ed.) ........................ 6
NEW YORK JURISPRUDENCE 2d (Contracts), § 505 ................................................... 10
Restatement (Second) of Contracts, § 243 ................................................................. 16
Restatement (Second) of Contracts, § 243(2) ........................................................... 16

8905017.7

Defendant PT Papertech, Inc. (erroneously named and sued as "Papertech Inc." and referred to herein as "Papertech") respectfully submits this memorandum along with the declaration of Oren J. Warshavsky in support of its Motion to Dismiss the First Amended Complaint filed by Defendant Kobayashi Ventures, LLC ("Kobayashi") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim against Papertech upon which relief can be granted.

## I.    INTRODUCTION

This action bears all the characteristics of a typical strike suit. Kobayashi originally filed this action in the United States District Court, Eastern District of Virginia, alleging that Papertech infringed patents purportedly owned by Kobayashi. In granting Papertech's motion to transfer venue, Judge Doumar noted that Kobayashi's patent infringement claim lacked merit. [Order, dated May 7, 2008, at p. 8.] Specifically, Judge Doumar explained that the assignment on which Kobayashi relies did not support its claim for damages for past infringement. [*Id.*]

In an attempt to collect the same damages that were expressly precluded by Judge Doumar, Kobayashi effectively dismissed its patent infringement claims, filed the First Amended Complaint and now asserts a single claim for breach of a November 12, 1998 license agreement (the "License Agreement") between Papertech and non-party Champion International Corporation ("Champion"). Kobayashi alleges that it has succeeded to Champion's rights under the License Agreement, and is owed royalties by Papertech. Like the patent infringement claims, this breach of contract claim is fatally flawed.

This Court should dismiss this lawsuit for two reasons. First, the License Agreement was properly terminated in October 2000. Kobayashi's initial complaint dealt with these facts in some detail, and attached Papertech's letter as an exhibit. Second, in the unlikely event that this Court determines that the License Agreement was not terminated, Kobayashi's First Amended Complaint is time barred. Specifically, the statute of limitations bars this action because Kobayashi's claim, if any, accrued <u>more than seven years ago</u> either: (i) on October 28, 2000

1

when Papertech terminated the License Agreement; or (ii) on March 1, 2001 when Papertech did not to pay the required royalty payment or provide the associated reporting; which, assuming the license agreement was still in effect at the time, would constitute a material breach. Either way, the statue of limitations bars Kobayashi's claim.

Recognizing these fatal flaws, Kobayashi attempts to navigate around them — removing both its detailed allegations about Papertech's September 27, 2000 letter of termination as well as the actual letter which was attached as an exhibit to the original complaint — and now urging that Papertech's termination was insufficient. Kobayashi's attempt to conceal the September 27, 2000 letter of termination is improper. Because the License Agreement was terminated in 2000, and because the alleged breach occurred in 2001, Kobayashi's First Amended Complaint cannot stand, and Papertech respectfully requests that the First Amended Complaint be dismissed.

## II.    STATEMENT OF FACTS

A motion to dismiss under Rule 12(b)(6) accepts as true the plaintiff's allegations in the complaint.[1] Accordingly, although Papertech disputes many of the allegations in Kobayashi's First Amended Complaint, as well as its original Complaint in this action, Papertech provides the following factual statement for purposes of this motion:

### A.    Papertech and Champion Entered Into a License Agreement

On or about November 12, 1998, Papertech entered into the License Agreement with Champion. [First Amended Complaint ("FAC"), filed June 27, 2008, ¶ 9, Ex. 3.] Under the License Agreement, Champion granted Papertech the non-exclusive right to make, use, and sell the patented subject matter of the patents asserted by Kobayashi in its original complaint ("Champion Patents"). [FAC ¶ 10, Ex. 3.]

### B.    The License Agreement Was Allegedly Transferred to Kobayashi

The First Amended Complaint alleges that the following series of transactions assigned to

---

1    *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996).

Kobayashi the Champion Patents and Champion's rights under the License Agreement:

(i)      Champion International Corporation became International Paper through a merger. [FAC at ¶ 8.];

(ii)      On or about October 19, 2007, Jacklin Associates, Inc. ("Jacklin") allegedly acquired title to the Champion Patents and the License Agreement as a result of a Patent Purchase Agreement between International Paper and Jacklin.[2] [FAC ¶ 7, Ex. 2.] International Paper expressly granted Jacklin the right to all causes of action and enforcement rights related to the patents, including remedies for past infringement. [FAC ¶ 7, Ex. 2 at Ex. D.]; and

(iii)      Then, on or about December 10, 2007, Jacklin purportedly assigned the Champion Patents and the License Agreement to Kobayashi as a result of a purported Patent Assignment. [FAC ¶ 6, Ex. 1.]

## C.     Papertech Terminated the License Agreement in 2000

The License Agreement gave Papertech, as licensee, the *unilateral* right to terminate the agreement: "LICENSEE shall have the right to terminate this Agreement upon thirty (30) days prior written notice to CHAMPION to such effect, in which event, this Agreement shall terminate on the thirty-first (31st) day after sending such notice." [FAC, Ex. 3 (¶ 16.3).] On or about September 27, 2000, Papertech, via its General Manager, Kari Hilden, sent a letter to Champion International Corporation (International Paper Co.), via its Director, Capital Project, Support and MRO, Richard Piela, providing notice of Papertech's termination of the License Agreement upon 30 days written notice to Champion International Corporation (the "September

---

2      Inexplicably, the License Agreement, which had been terminated almost seven years earlier, was included in a schedule of "Assigned Agreements" attached to the Patent Purchase Agreement. It is also noteworthy that Exhibit 2 of the First Amended Complaint is an *unsigned* Patent Purchase Agreement; the only signature is International Paper's signature on Exhibit D to Exhibit 2, which is entitled Assignment of Patent Rights. [FAC, Ex. 2 (Ex. D).]

27, 2000 letter of termination"). [FAC ¶ 16; Complaint ("Complaint"), filed December 27, 2007, ¶ 12, Ex. 6; Declaration of Oren Warshavsky, Esq. In Support of PT Papertech, Inc.'s Motion to Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(5), and In the Alternative For Summary Judgment Under Federal Rule of Civil Procedure 56 ("Warshavsky Decl.") ¶ 3, Ex. A.]

### D.    Kobayashi Sued Papertech in December 2007

On or about December 27, 2007, Kobayashi commenced this action against Papertech in the United States District Court, Eastern District of Virginia.    In its original complaint, Kobayashi sued Papertech for patent infringement. [Complaint ¶¶ 29-34.]   In its First Amended Complaint, filed with this court, Kobayashi dismissed its patent infringement claims and now only alleges breach of the License Agreement. [FAC ¶¶ 19-23.]

## III.    KOBAYASHI FAILED TO STATE A CLAIM AGAINST PAPERTECH

### A.    Papertech Meets the Legal Standard for a 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed where the plaintiff fails "to state a claim upon which relief can be granted."[3]  The purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the complaint; that is, to test whether the complaint alleges all of the facts necessary to state the particular cause of action.[4]   When considering a motion to dismiss pursuant to Rule 12(b)(6), the court "must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff."[5]  A court, however, is "not bound to accept as true a legal conclusion couched as a

---

3       Fed. R. Civ. P. 12(b)(6).

4       *Bernheim, supra*, 79 F.3d at 321.

5       *Id.* (citation omitted).

factual allegation."[6]  "A complaint may not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [7]

Accepting its allegations as true and viewing them in the light most favorable to Kobayashi, does not overcome Kobayashi's failure to state a claim against Papertech because: (1) Kobayashi cannot provide an existing contract necessary to support a claim for breach of the License Agreement and (2) even if it could somehow establish an existing License Agreement, any claim for a breach thereof is barred by the statute of limitations.  Kobayashi's claim is therefore subject to dismissal under Rule 12(b)(6).

### B.    Kobayashi Made The September 27, 2000 Termination Letter Part of The Record of This Case

Generally, in a motion to dismiss, the court may consider only material found in the complaint.[8]  For purposes of this rule, "'[t]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."[9]  There are exceptions to this rule, at least two of which are applicable to this case, that allow the court to consider on a motion to dismiss items not attached to the complaint— specifically the September 27, 2000 letter of termination.  [FAC ¶ 16; Complaint ¶ 12, Ex. 6; Warshavsky Decl. ¶ 3, Ex. A.]

First, the court is permitted to consider, on a motion to dismiss, documents that are not attached to the complaint, but are referred to, central to, or relied upon in the complaint (that

---

6    *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

7    *Bernheim*, 79 F.3d at 321 (citation and internal quotation omitted).

8    Fed. R. Civ. P. 12(d).

9    *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)(citation omitted)(on motion to dismiss, allowing consideration of referenced contracts between plaintiffs and defendants).

were in plaintiff's possession or known to plaintiff when it brought suit), and are not disputed.[10]

"Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint."[11] This exception permits the court to consider Papertech's September 27, 2000 letter of termination.[12] This letter is central to and is relied upon in Kobayashi's First

---

10    *Chambers*, supra, 282 F.3d at 153; *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991); *see* 2 MOORE'S FEDERAL PRACTICE, § 12.34[2] (Matthew Bender 3d ed.)(noting the court is permitted to consider for motion to dismiss "undisputed documents alleged or referenced in complaint").

11    *Chambers*, supra, 282 F.3d at 153. *See e.g., International Audiotext Network, Inc. v. American Telephone and Telegraph Co.*, 62 F.3d 69, 72 (2d Cir. 1995)(on a motion to dismiss monopoly claims, permitting consideration of agreement between defendant and third party, though agreement was not incorporated in or attached to complaint, as agreement was integral to the complaint and complaint relied on agreements' terms and effects); *Cortec Industries, supra*, 949 F.2d at 44 (2d Cir. 1991)(on motion to dismiss, allowing consideration of documents transmitted to plaintiffs by defendants and relied upon by plaintiffs in drafting complaint, but not attached to complaint; "Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion."); *60223 Trust v. Goldman, Sachs & Co.*, 540 F. Supp. 2d 449, 451 (S.D.N.Y. 2007)(considering notes and reports on motion to dismiss "since plaintiffs have mentioned and relied on these notes and reports in the complaint"). *See also Enervations, Inc. v. Minnesota Mining and Manufacturing Co.*, 380 F.3d 1066, 1067-69 (8th Cir. 2004)(allowing consideration of contract termination letter on a motion to dismiss as it was "embraced by the pleadings"'; complaint alleged defendant improperly terminated contract, but letter was not attached to complaint).

12    It should be noted that even when a document is not directly referenced in the complaint, the court may consider it on a motion to dismiss. For example, in *Levy v. Verizon Information Services, Inc.*, 498 F. Supp. 2d 586, 594 (E.D.N.Y. 2007), where plaintiffs carefully avoided mentioning certain documents in their complaint, the court considered those documents on a motion to dismiss as the documents were referenced "indirectly." Likewise, in *Connecticut Indemnity Co. v. 21st Century Transport Co., Inc.*, 2001 U.S. Dist. LEXIS 10795, *9-10 (E.D.N.Y. 2001); 2001 WL 868340 *3-4 (E.D.N.Y. 2001), the court held that it was appropriate to consider on a motion to dismiss a purchase agreement that was not incorporated or even referred to in a complaint. The court stated the agreement "clearly is integral to the Amended Complaint since liability under plaintiff's theory would be available only if the purchase of assets did not insulate [defendant] Allied from [defendant] Rutigliano's liabilities." This is identical to the present case as Kobayashi's breach of contract theory would only be available if the alleged "purported" termination was not effective to terminate the License Agreement.

6

Amended Complaint because, to bring this action, Kobayashi must establish that the License Agreement was in operation.    To do so,    Kobayashi must overcome the existence of the September 27, 2000 letter terminating the License Agreement.    Kobayashi recognized this fact since it alleged in the First Amended Complaint that Papertech's purported termination of the License Agreement was incorrect.  [FAC ¶ 16.]  Moreover, Kobayashi referred to the letter in the First Amended Complaint, *and* referenced, attached, and incorporated by reference the letter in its original complaint.    [FAC ¶ 16 ("Papertech . . . purports to have terminated [the License Agreement], despite having expressly failed to do so in accordance with the terms of the License Agreement."); Complaint ¶¶ 12 ("In a letter dated September 27, 2000, Papertech . . . allegedly sent a letter to Richard Piela of Champion . . . which claimed termination . . . .), 19, & Ex. 6.] There is no dispute that Kobayashi possessed the letter when it prepared the First Amended Complaint as the letter was attached to the original complaint. [13]

    Kobayashi's intentional removal of the letter from the First Amended Complaint does not prevent this court from considering the letter.    To the contrary, removal of the letter evidences Kobayashi's bad faith effort to avoid having this court consider the letter because of its fatal impact on Kobayashi's  breach of contract claim.[14]

    Second, the court may disregard allegations in an amended pleading that are inconsistent with the original pleading.[15]  In the original complaint, Kobayashi conceded termination of the

---

13    *Cortec, supra*, 949 F.2d at 48 ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

14    *See Yak v. Bank Brussels Lambert*, 252 F.3d 127, 131 (2d Cir. 2001)("Carefully avoiding all mention of the Consulting Agreements does not make them any less integral to her complaint.").

15    *See Wallace v. New York City Dept. of Corrections*, 1996 U.S. Dist. LEXIS 22368 *3-4 (E.D.N.Y. 1996); 1996 WL 586797 *2 (E.D.N.Y. 1996)("In this amended complaint, the plaintiff directly contradicts the facts set forth in his original complaint. This court accepts the facts as described in the original complaint as true and concludes that the plaintiff has failed to

License Agreement in paragraph 15: "After termination of the License Agreement, Papertech continued and continues to this day to make . . . products embodying Kobayashi's Patented Technology." [Complaint ¶ 15; *see also* Complaint ¶ 2 (alleged since September 27, 2000—date of termination letter—Papertech infringed on patents).][16]  In direct contradiction of this position, Kobayashi, in its First Amended Complaint, now alleges that the termination was not "in accordance with the terms of the License Agreement" and is ineffective (as it is suing on the License Agreement). [FAC ¶ 16.]

As an alternative, if the court does not consider the September 27, 2000 termination letter on this motion to dismiss, Papertech requests that the court convert this motion into one for summary judgment under Federal Rule of Civil Procedure 56 so that the September 27, 2000 letter of termination may be considered.  Papertech maintains, however, that it is appropriate for the court to resolve this matter as a motion to dismiss under Rule 12(b)(6).

### C.    No Ongoing License Agreement Exists Between Kobayashi and Papertech

The required elements for a breach of contract claim under New York law are: "" (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.'" [17]   In this case, Kobayashi claims that Papertech breached the License Agreement. This claim fails because the License Agreement is no longer  a valid contract.   Papertech terminated the License Agreement almost eight years ago.  This termination was communicated by Papertech, pursuant to the terms of the License Agreement, when, on September 27, 2000, it sent a termination letter to Champion. [FAC ¶ 16 & Ex. 3 (¶ 16.3); Complaint ¶ 12, Ex. 6.]

---

meet any of the requirements set forth in Williams to establish the liability.").

16 By the very nature of a patent infringement claim, Kobayashi Ventures was forced to concede the termination of the License Agreement in the original complaint.   The existence of an operative License Agreement would have prevented a claim for patent infringement.

17     *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191, 198 (S.D.N.Y. 2006)(citation omitted).

According to the License Agreement, the termination was effective on the "thirty-first (31st) day after sending such notice"—October 28, 2000. [*Id.*] Obviously, as there is no contract, there can be no claim for breach of the contract.[18]

Kobayashi will attempt to argue that the License Agreement was not properly terminated on ground that Papertech failed to give proper notice of termination, and thus the License Agreement should stand. [FAC ¶ 16.] This argument fails.

First, the License Agreement was terminated in accordance with the express provisions of the License Agreement itself. Paragraph 16.3 of the License Agreement states: "LICENSEE shall have the right to terminate this Agreement upon thirty (30) days prior written notice to CHAMPION to such effect, in which event, this Agreement shall terminate on the thirty-first (31st) day after sending such notice." [FAC, Ex. 3 (¶ 16.3).] Where the parties have agreed to a termination clause in a contract, it must be enforced as written.[19] Here, Papertech (the LICENSEE) sent a letter to Champion, stating its intention to terminate the License Agreement on thirty days notice. [FAC ¶ 16; Complaint ¶ 12, Ex. 6; Warshavsky Decl. ¶ 3, Ex. A.] Paragraph 16.3 of the License Agreement should be enforced as Papertech terminated the contract in accordance with its provisions.[20]

---

18    *Ely-Cruikshank, Co., Inc. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993)("[Plaintiff] did not, and could not, allege that the [defendant] breached the contract by selling the building after it had properly terminated the contract.").

19    *Noah v. L. Daitch & Co.*, 192 N.Y.S.2d 380, 385 (1959)(holding that cause of action that rests upon alleged breach of agreement was insufficient because termination clause existed and defendant exercised termination clause); *see also Szatmari v. Rosenbaum*, 490 N.Y.S.2d 97 (1985)(termination clause in contract to be enforced as written, and was effective on date specified in termination clause).

20    Kobayashi is expected to respond that the September 27, 2000 letter of termination was sent to the wrong person (business personnel, not legal personnel), as the License Agreement specified that notices under the License Agreement "shall be sufficient" if given to Richard Piela, for business matters, and Richard C. Stewart, II, for legal matters. [FAC, Ex. 3 (¶ 21.1).] This argument fails for a variety of reasons, including, without limitation,: (1) paragraph 16.3 of

Second, assuming, solely for the sake of argument, that the License Agreement was not terminated in accordance with the express provisions of the License Agreement (*i.e.*, that notice went to the wrong person), Kobayashi's predecessor in interest received actual and reasonable notice of the termination of the License Agreement such that its termination should be enforced.[21]

In a case very similar to the present facts, a New York court held that termination of a royalty agreement was effective, even if it was sent to the purported wrong representative.[22] In *Ives v. Mars Metal Corp*, the defendant was a party to a royalty contract with a third party, and plaintiff was an acknowledged partial assignee of the third party's interest in that agreement, such that defendant was sending part of the royalty payments to plaintiff.[23]    Defendant terminated the contract with the third party and plaintiff sued.[24]    Plaintiff argued that the termination was ineffective because it was sent to the third party's attorney rather than to the

---

the License Agreement only specifies that the termination notice must go to "Champion", *not* to a specific person at Champion; (2) the termination of a licensing arrangement is a business matter; and (3) paragraph 21.1 of the License Agreement only states that notice to the specified individuals shall be "sufficient," *not* that it is required or mandatory.

21    *Noah*, *supra*, 192 N.Y.S.2d at 385 (holding even if no termination clause existed in a supplier-agency contract, parties allowed to terminate after giving reasonable notice; holding 43 days notice "prima facie  . . . reasonable notice"). *See also Mechanics and Traders' Nat'l Bank of the City of N.Y. v. Winant*, 123 N.Y. 265, 268, 271-72 (1890)(court rejected City's contention that payment on contract should be withheld because required notice for payment was sent to wrong official (sent to comptroller, not commissioner of public works))("The attempt was made in good faith to charge the city with notice . . . . substantial compliance has been shown."); NEW YORK JURISPRUDENCE 2d (Contracts), § 505 ("Where actual notice of termination required by a contract has in fact been given, the form is of little import, and the fact that the notice was sent to counsel for the other party instead of directly to the other party personally does not invalidate its effect.  Thus, where notice to terminate is actually received by the plaintiff, it is immaterial that the defendant did not mail it to the exact address specified in the contract.").

22    *Ives v. Mars Metal Corp.*, 196 N.Y.S. 2d 247, 249 (1960).

23    *Ives*, *supra*, 196 N.Y.S. 2d at 248.

24    *Id.* at 249.

third party itself. The court rejected this argument:

> Concerning the final question as to whether the letter of October
> 15, 1957 accomplished a termination of the agreement as of a date
> three months subsequent thereto, it would be hypertechnical in the
> extreme to hold otherwise. *Where actual notice of termination has
> in fact been given, the form is of little import, and the fact that
> notice was sent to counsel instead of directly to [the third party]
> would not invalidate its effect.* Particularly, under the
> circumstances of the instant litigation, where the plaintiff . . .
> admits knowledge of the letter.[25]

A similar result occurred in *U.S. Broadcasting Co. Corp. v. National Broadcasting Co.,
Inc.*,[26] which involved a lawsuit for breach of a licensing agreement that contained a six-month-
notice termination clause. The defendant sent a termination letter setting a termination date six
months in the future.[27] Defendant sent the letter to the president of the plaintiff corporation
rather than to the person and address specified in the licensing agreement, though it was
undisputed that plaintiff had actual notice.[28] The court disagreed with plaintiff's claim that the
termination was ineffective, citing *Ives* for the proposition that "Under New York law the
address to which notice is sent is immaterial even if it varies from the address specified in a
contract if actual notice is received."[29] It went on to hold: "[h]ere it is clear that plaintiff and
plaintiff's counsel timely received both notices and it would be "hypertechnical in the extreme"
to hold that notice actually received was ineffective."[30]

In the present case, Kobayashi admitted that Papertech purported to terminate the License
Agreement and even attached the letter of termination to its prior pleading. [FAC ¶ 16;

---

25    *Id.* (emphasis added).

26    *U.S. Broadcasting Co. Corp. v. National Broadcasting Co., Inc.*, 439 F.Supp. 8, 9 (D.C.
Mass. 1977) (applying New York law).

27    *U.S. Broadcasting, supra*, 439 F.Supp. at 10.

28    *Id.*

29    *Id.*

30    *Id.*

Complaint ¶ 12, Ex. 6.] There is no doubt that Kobayashi had knowledge of the termination letter.

**D.** **Even If a License Agreement Existed, the Statute of Limitations for Breach of Contract Prevents Kobayashi From Suing Papertech**

In New York, the statute of limitations on a cause of action for breach of contract is six years.[31] This six year period begins running at "the time when the plaintiff first became enabled to maintain the particular action in question," *i.e.*, when the contract was breached.[32]

As set forth in detail below, the statute of limitations precludes this action because Kobayashi's claim accrued more than seven years ago. Moreover, any argument to the contrary must fail because it would render the statute of limitations meaningless.

**1.** **The Statute of Limitations Began Running More Than Seven Years Ago Upon the Termination of the License Agreement**

Kobayashi sued Papertech for a "material breach" of the License Agreement knowing full well that such alleged breach, to the extent that it occurred at all, occurred more than seven years prior to filing its complaint in this action. [FAC ¶ 21.] Kobayashi alleged that Papertech tried to terminate the License Agreement, "failed to do so in accordance with the terms of the License Agreement," failed to provide semiannual, mandatory reports of its sales, and failed to make royalty payments under the License Agreement, thus breaching the License Agreement and causing Kobayashi damages. [FAC ¶¶ 13-18, 21-22.]

---

31    N.Y.C.P.L.R.§ 213(2)(action upon a contractual liability must be commenced within six years).

32    *Ashfar v. Procon Inc.*, 442 F. Supp. 887, 890 (S.D.N.Y. 1977); *Ely-Cruikshank, Co., Inc. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993)("In New York, a breach of contract cause of action accrues at the time of the breach. '[T]he Statute runs from the time of the breach though no damage occurs until later.'")(citations omitted).

The purported breach occurred on the date Papertech's termination of the License Agreement became effective—October 28, 2000 (*i.e.*, the 31st day after Papertech sent its September 27, 2000 letter of termination to Champion). Kobayashi alleged (wrongly) that Papertech's 2000 termination of the License Agreement was not in accordance with the License Agreement, but if this was the case, under Kobayashi's theory of liability, such "purported" termination would have been a total breach of the License Agreement and would have caused the statute of limitations to begin running on October 28, 2000.[33]

The facts of *Ashfar v. Procon* correlate with the current matter. In *Ashfar*, the defendant terminated an agency contract with plaintiff. Under the contract, plaintiff was an agent of defendant in procuring and executing oil refinery contracts in Iran and was to receive commissions. Plaintiff alleged two breaches of the contract: wrongful termination of the contract; and compensation due to plaintiff subsequent to the termination.[34] Defendants moved to dismiss the complaint for failure to state a claim on statute of limitations grounds.[35] The court granted those motions and adhered to this decision on a motion for reconsideration.[36] Like the current action, the complaint in *Ashfar* conceded that defendant notified plaintiff of the

---

33    *See Ashfar v. Procon*, *supra*, 442 F. Supp. at 890 ( holding termination of contract commenced accrual of statute of limitations for breach of contract); *Ely-Cruikshank*, *supra*, 81 N.Y.2d at 402-03 (holding that statute of limitations for breach of contract action accrued at time of breach, i.e., at termination of contract, not at the later sale of real estate occurring after contract termination (even if contract was terminated in bad faith)). *See also Enervations*, *supra*, 380 F.3d at 1069 (claim for breach of distributor agreement dismissed as time barred because it accrued when agreement allegedly wrongfully terminated); *Boracchia v. Biomet, Inc.*, 2008 U.S. Dist. LEXIS 14025, * 14 (N.D. Cal. 2008); 2008 WL 512721 *5, *7 (N.D. Cal. 2008)(claim for breach of distributor agreement was time barred as claim accrued when defendant "unequivocally informed Plaintiffs it was terminating the Agreement," even though plaintiff alleged termination was not proper).

34    *Ashfar*, *supra*, at 442 F.Supp. at 888.

35    *Id.*

36    *Id.*

termination and plaintiff alleged that the termination violated the agreement.[37]  However, the plaintiff attempted to skirt the statute of limitations for breach of contract by arguing the claim for compensation became due after the termination.[38]  The court rejected this argument and found that a cause of action accrued for the *entire* contract upon its termination, stating, "Upon its termination plaintiff was free to bring an action, not only for damages resulting from the wrongful termination, but also for the loss of benefits expected to inure under that agency agreement in the future."[39]  Plaintiff had knowledge that the contract was over ("plaintiff was adequately notified that his services were no longer wanted"), and his rights to seek commissions due then and which might become due in the future had accrued.[40]

While *Ashfar*'s facts are very similar to this matter, the facts of *Ediciones Quiroga, S.L. v. Fall River Music, Inc.*,[41] are even more closely aligned with the present action.  In *Quiroga*, plaintiff Quiroga and defendant Fall River entered into a settlement agreement on June 25, 1975 granting Fall River the ability to use certain copyrighted material and requiring royalties to be paid to Quiroga by Fall River.[42]  On November 12, 1986, defendant Fall River communicated to plaintiff Quiroga that the 1975 agreement was void, *i.e.*, completely repudiating the agreement.[43]  After that, defendant Fall River did not send any further payment or accounting to plaintiff Quiroga.[44]

---

37    *Id.* at 889.

38    *Id.*

39    *Id.*

40    *Id.*

41    *Ediciones Quiroga, S.L. v. Fall River Music, Inc.*, 1998 U.S. Dist. LEXIS 19039 (S.D.N.Y. 1998); 1998 WL 851574 (S.D.N.Y. 1998).

42    *Id.* at 1998 U.S. Dist. LEXIS 19039 at *9-*12; 1998 WL 851574 at *3-4.

43    *Id.* at 1998 U.S. Dist. LEXIS 19039 *92; 1998 WL 851574 at *32-33.

44    *Id.* at 1998 U.S. Dist. LEXIS 19039 *93-94; 1998 WL 851574 at *32-33.

Plaintiff Quiroga filed a lawsuit on June 9, 1993 against defendant Fall River (and others) for breach of the 1975 agreement, among other things, and Fall River filed a motion for summary judgment on the ground that Quiroga's claim was barred by New York's six year statute of limitations.[45]  The court held that Quiroga's claim on the agreement was barred by New York's six year statute of limitations: "Thus, since Fall River repudiated on November 12, 1986, more than six years before this suit was filed, and as Fall River never retracted that repudiation, Plaintiff's Claim I is barred by the statute of limitations and summary judgment on this Claim is granted to Defendants."[46]

Like *Quiroga*, Papertech communicated notice of its termination of the contract and did not make any further reporting or pay any further royalties under the contract after that termination, and Kobayashi's predecessors in interest failed to timely pursue a claim for breach of the contract.  Now more than seven years after such alleged breach of the License Agreement, because it has no standing to bring a patent infringement action for past damages against Papertech, Kobayashi brings this action in a desperate attempt to seek the same damages that it was precluded from obtaining in its original complaint.  This court should hold, like *Quiroga* and *Ashfar*, that the statute of limitations bars Kobayashi's breach of contract claim.

### 2.    At Best, The Statute of Limitations Began Running More Than Seven Years Ago, When Papertech Did Not Report or Pay Royalties

In a vain attempt to avoid having its claim barred by the statute of limitations, Kobayashi will likely argue that Papertech's attempted termination of the License Agreement was not a breach.  Even if this was true (which Papertech denies), the statute of limitations for breach of contract would have accrued at the latest on March 1, 2001, when Kobayashi knew of Papertech's alleged breach by non-reporting and non-payment of royalties due under the License

---

45    *Id.* at 1998 U.S. Dist. LEXIS 19039 *1, *91; 1998 WL 851574 at *1, *32.

46    *Id.* at 1998 U.S. Dist. LEXIS 19039 *94-95; 1998 WL 851574 at *32-33.

Agreement, as well as Papertech's September 27, 2000 letter asserting its termination of the License Agreement, thus refusing to perform further under the License Agreement. *See* Restatement (Second) of Contracts, § 243(2) ("Except as stated in Subsection (3), a breach by non-performance accompanied or followed by a repudiation gives rise to a claim for damages for total breach.").[47]

The License Agreement (if it was effective) required Papertech to report and pay royalties twice a year—once for the period January 1 through June 30 and once for the period July 1 through December 31. [FAC, Ex. 3 (¶ 1.8).] Kobayashi alleged in its First Amended Complaint that Papertech made a royalty payment under the License Agreement in July 2000, purported to terminate the agreement, continues to make, use, and sell technology covered in the Champion Patents, failed to make report or make royalty payments, and has "[s]ince September 2000" installed many "WebVision systems." [FAC, ¶¶ 11-18.] After the September 27, 2000 letter of termination, Papertech's next reporting and payment would have been due within 60 days of the July 1, 2000 to December 31, 2000 Reporting Period— *i.e.*, March 1, 2001. [FAC, Ex. 3 (¶¶ 1.8, 4.1).] Under Kobayashi's theory of liability, Papertech's failure to timely make the royalty payment and provide the associated reports (plus Papertech's "purported" termination of the License Agreement) constituted an unequivocal breach of the License Agreement on March 1, 2001, had the License Agreement been in existence.[48]

---

[47]    Subsection 3 of the Restatement (Second) of Contracts, § 243 states: "Where at the time of the breach the only remaining duties of performance are those of the party in breach and are for the payment of money in installments not related to one another, his breach by non-performance as to less than the whole, whether or not accompanied or followed by a repudiation, does not give rise to a claim for damages for total breach." This subsection is not applicable to this matter as Kobayashi alleged Papertech was obligated to perform in ways other than the payment of money, *i.e.*, reporting sales, among other things. [FAC¶ 17.]

[48]    *Ely-Cruikshank*, *supra*, 81 N.Y.2d at 402 (statute of limitations runs at time of breach).

8905017.7

### 3. To Allow Kobayashi's Claim to Succeed Circumvents the Purpose of the Statute of Limitations

Recognizing these fatal flaws, Kobayashi is likely to argue that it is not suing for wrongful termination of the License Agreement, but rather that it is suing for each failure to make royalty payments within the six year statute of limitations period. This stop-gap, however, fails under case law holding that events after termination of the parties' contract are not independent wrongs starting new statute of limitations period. Moreover, such an argument would circumvent the very purpose of a statue of limitations.

For example, in *Ashfar*, plaintiff attempted to avoid the statute of limitations by arguing he was not entitled to certain compensation under the agreement until after the termination, which purportedly would delay the accrual of the statute of limitations.[49] The court rejected this theory, stating, "In effect, plaintiff is attempting to convert what would otherwise be an element of damages flowing from an alleged wrong no longer actionable because of the statute of limitations bar, into a series of independent and continuing injuries."[50] "Failures to make commission payments which came due since the termination of the agency do not constitute independent wrongs: the right to those payments was established by the agency agreement, and the time within which an action must be brought with respect to failure to make such payments commenced to run when the agency agreement was terminated."[51]

Likewise, in *Agron v. The Trustees of Columbia University in the City of New York*,[52] plaintiff's claim for breach of contract was barred under New York's six year statute of limitations, even though the plaintiff tried to twist her theory into a continuing breach. Plaintiff

---

49    *Ashfar*, *supra*, 442 F. Supp. at 890, fn. 1.

50    *Id.* at 890.

51    *Id.*

52    *Agron v. The Trustees of Columbia University in the City of New York*, 1993 U.S. Dist. LEXIS 4565 (S.D.N.Y. 1993); 1993 WL 118495 (S.D.N.Y. 1993).

alleged that defendant university breached its agreement to re-admit her as a student.[53]  The university sought summary judgment on the breach of contract claim on the ground that the New York's statute of limitations on contract actions barred the action.[54]  The court found that the contract claim was barred by the statue of limitations as the university first rejected plaintiff's readmission in 1977 (and repeatedly thereafter) and the action was filed on September 12, 1988.[55]

The plaintiff attempted to work around this fact by alleging that each rejection of her application for readmission was an anticipatory breach, not a repudiation or total breach, which allowed a new statute of limitations period to begin each time.[56]  The court made short work of this argument, finding this argument was inconsistent with plaintiff's complaint (and the alleged contract) that alleged an obligation to admit and this obligation was breached by rejection. [57]

The same analysis applies here.  To allow Kobayashi to continue with its breach of contract again more than seven years after both knowing that Papertech believed the License Agreement was terminated and that Papertech never again reported or paid pursuant to the License Agreement, would be to obliterate the very purpose of the statute of limitations.  Stated another way, to allow Kobayashi to bring this action after these seven-plus years, would permit Kobayashi to sit on Papertech's termination and alleged breach for an unfixed and indefinite time, all the while an unsuspecting Papertech would be prejudiced.  As the License Agreement was not scheduled to end until the "last to expire Patent Rights" (aside from Papertech's permitted termination rights), if the statute of limitations is not found to accrue at the breaches in

---

53      *Agron, supra*, 1993 U.S. Dist. LEXIS 4565 at *9; 1993 WL 118495 at *3.

54      *Id.* 1993 U.S. Dist. LEXIS 4565 at * 5-6; 1993 WL 118495 at *2.

55      *Id.* 1993 U.S. Dist. LEXIS 4565 at *2-4, 10-11; 1993 WL 118495 at *1-3, 3-4.

56      *Id.* 1993 U.S. Dist. LEXIS 4565 at *10; 1993 WL 118495 at *3-4.

57      *Id.* 1993 U.S. Dist. LEXIS 4565 at *11; 1993 WL 118495 at *3-4.

2000 or 2001, Kobayashi could allow the purported License Agreement and its claims to sit for many, many years – much longer than the six year statute of limitations.

This should not be permitted as Kobayashi (or its alleged predecessors in interest) knew of alleged breach more than seven years before commencing this action, yet ignored them. As the court similarly held in *Ely-Cruikshank*, allowing Kobayashi to pursue its breach of contract claim "would effectively eviscerate the Statute of Limitations." [58]

## IV.    OTHER PROCEDURAL ISSUES

Papertech notes that Kobayashi's subject matter and venue allegations in the First Amended Complaint are lacking.    The allegations relating to subject matter jurisdiction are based on federal question and patents—none of which are alleged in this First Amended Complaint that only contains a cause of action for breach of contract.    [FAC ¶ 3.][59]    Likewise, the allegations relating to venue are incorrect in part, as Kobayashi cited 28 U.S.C. § 1400(b) that relates to venue over patent infringement actions, and are at least vague in the remaining part, as Kobayashi cited 28 U.S.C. § 1391, but did not specify which subsection upon which it relied.

Papertech does not move for dismissal of the First Amended Complaint on these grounds as it presumes Kobayashi intended to pursue this pleading on diversity grounds, but Papertech raises these issues for the court's and the parties' attention.

---

[58]    *Ely-Cruikshank, supra*, 81 N.Y.2d at 404 (rejecting argument that date of discovery of breach commences accrual of statute of limitations); *see also Ashfar, supra*, 442 F. Supp. at 891(recognizing that plaintiff's argument to extend statute of limitations accrual would "circumvent every statutory period of limitations.").

[59]    *See* 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1338(a)(patent

## V.    <u>CONCLUSION</u>

For all of the foregoing reasons, Kobayashi's First Amended Complaint should be dismissed.

Dated: July 14, 2008

New York, New York

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: s/ Oren J. Warshavsky
Oren J. Warshavsky, Esq. (OW 9469)
Jason S. Oliver, Esq. (JO 1676)
45 Rockefeller Plaza
New York, New York 10111
Phone: (212) 589-4624
Facsimile: (212) 589-4201
owarshavsky@bakerlaw.com

and

J. Rick Taché, Esq. (*pro hac vice* pending)
Janet Lynn Hickson, Esq. (*pro hac vice* pending)
Elizabeth M. Weldon, Esq. (*pro hac vice* pending)
**SNELL & WILMER, L.L.P.**
600 Anton Blvd, Suite 1400
Costa Mesa, California 92626
eweldon@swlaw.com

*Attorneys for Defendant*
*PT Papertech, Inc.*

jurisdiction); 35 U.S.C. § 281 (remedies for patent infringement).

8905017.7