UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | : | |
|---|---|---|
| KOBAYASHI VENTURES, LLC, | : | 08 CIV. 04450 (LAP) |
| Plaintiff, | : | |
| | : | *Document Filed Electronically* |
| -against- | : | |
| | : | |
| PAPERTECH INC., | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PT PAPERTECH, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6), AND IN THE ALTERNATIVE FOR SUMMARY JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 56**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................... 1

II. THE LICENSE AGREEMENT WAS TERMINATED AND KOBAYASHI IS JUDICIALLY ESTOPPED TO ARGUE OTHERWISE ................................................. 1

    A. Judicial Estoppel Prohibits a Party From Successfully Maintaining One Proposition and Subsequently Contradicting That Position ................................. 1

    B. Until This Opposition, Everything Kobayashi Did Was Premised On the Termination of the License Agreement in September 2000 ................................. 2

    C. Declaration of Inger H. Eckert Is Ineffective To Combat Earlier Admissions ................................................................................................................ 4

    D. Papertech's Termination Letter was Sufficient to Terminate the Contract ........... 5

III. EVEN IF THE LICENSE AGREEMENT WAS STILL IN EXISTENCE, THE STATUTE OF LIMITATIONS BARS THIS LAWSUIT ................................................ 6

    A. Even if the Termination of the License Agreement Were Somehow Wrongful, It Triggered the Statute of Limitations for the Entire Contract ............ 6

    B. The Policy Behind Statute of Limitations Further Supports Its Application ......... 9

IV. CONCLUSION ........................................................................................................ 10

## TABLE OF AUTHORITIES

**Page**

### Federal Cases

*Ashfar v. Procon*,
    442 F.Supp. 887 (S.D.N.Y. 1977) ............................................................................. 6, 7

*Cities Service Helex, Inc. v. US National Helium Corp*,
    211 Ct.Cl. 222 (1976) .................................................................................................. 8

*Ediciones Quiroga, S.L. v. Fall River Music, Inc.*,
    1998 U.S. Dist. LEXIS 19039, 1998 WL 851574 (S.D.N.Y. 1998) ....................... 6, 7

*Guilbert v. Gardner*,
    480 F.3d 140 (2nd Cir. (N.Y.) 2007) ........................................................................... 7

*Leeds v. Meltz*,
    85 F.3d 51 (2nd Cir. 1996) .......................................................................................... 5

*McDonnell Douglas Corp. v. United States*,
    182 F.3d 1319 (1999) .................................................................................................. 8

*Royal Industries v. St. Regis Paper Co.*,
    420 F.2d 449 (9th Cir. 1969) ....................................................................................... 8

*St. Paul Plow-Works v. Starling*,
    140 U.S. 184 (1891) .................................................................................................... 8

*U.S. Broadcasting Co. Corp. v. National Broadcasting Co., Inc.*,
    439 F.Supp. 8 (D.C. Mass. 1977) ................................................................................ 5

*United Mfg. & Service Co. v. Holwin Corp.*,
    187 F.2d 902 (7th Cir. 1951) ................................................................................... 3, 8

### State Cases

*Airco Alloys Division, Airco Inc. v. Niagara Mohawk Power Corp.*,
    430 N.Y.S.2d 179 (1980) ......................................................................................... 7, 8

*Beller v. William Penn Life Ins. Co. of N.Y.*,
    778 N.Y.S.2d 82 (2004) ............................................................................................... 7

*Brunner v. Town of Geneseo*,
    780 N.Y.S.2d 880 (2004) ............................................................................................. 9

*Environmental Concern, Inc. v. Larchwood Const. Corp.*,
    101 A.D.2d 591 (N.Y.A.D. 1984) ............................................................................... 2

## TABLE OF AUTHORITIES
## (continued)

**Page**

*Festinger v. Edrich*,
    32 A.D.3d 412 (N.Y.A.D. 2006) .................................................................................... 4

*Ives v. Mars Metal Corp.*,
    196 N.Y.S.2d 247 (1960) ............................................................................................... 5

*McCoy v. Feinman*,
    99 N.Y.2d 295 (2002) .................................................................................................... 9

*Mikkelson v. Kessler*,
    50 A.D.3d 1443 ............................................................................................................. 2

*Nussenzweig v. diCorcia*,
    9 N.Y.3d 184 (2007) ...................................................................................................... 9

*Perkins v. Perkins*,
    226 A.D.2d 610 (N.Y.A.D. 1996) .................................................................................. 4

*Perkins v. Perkins*,
    641 N.Y.S.2d 396 (1996) ............................................................................................... 2

*Stalis v. Sugar Creek Stores, Inc.*,
    744 N.Y.S.2d 586 (2002) ........................................................................................ 7, 8

I.  **INTRODUCTION**

Kobayashi's Opposition requires the Court to ignore the entire history of this litigation, where at every turn Kobayashi *insisted* that the License Agreement had been terminated by Papertech in 2000—indeed, Kobayashi's original patent infringement lawsuit *depended* on that fact. Kobayashi's patent-infringement claim, however, was dealt a serious blow, when Judge Doumar severely limited the scope of its claim in his Order transferring the case to this Court. Since the facts that Kobayashi convinced Judge Doumar to adopt are no longer profitable, Kobayashi now seeks to convince this Court of an entirely contradictory set of facts. Such a charade is not fair to Papertech, and it is not fair to this Court. Papertech asks the Court to acknowledge what *both* parties acknowledged all along: that the Termination Letter sent by Papertech in 2000 terminated the License Agreement. Based on that finding, the Court should dismiss Kobayashi's complaint as barred by the six-year statute of limitations.

II. **THE LICENSE AGREEMENT WAS TERMINATED AND KOBAYASHI IS JUDICIALLY ESTOPPED TO ARGUE OTHERWISE.**

Kobayashi's opposition relies almost entirely on its unsupported claim that its predecessor in interest did not receive actual notice of the Termination Letter. But as discussed more fully below, Kobayashi's new-found position directly contradicts what it advocated a mere few months ago, when it emphatically insisted that the Termination Letter properly terminated the contract (and thus permitted it to bring a patent infringement claim). It continued this insistence until Judge Doumar held that the patent infringement claim was fatally flawed by an ineffective assignment. Under well-established rules of judicial estoppel, this court should not permit Kobayashi to flip-flop when, as now, the opposite position becomes more attractive.

A.  **Judicial Estoppel Prohibits a Party From Successfully Maintaining One Proposition and Subsequently Contradicting That Position.**

"Judicial estoppel, also known as estoppel against inconsistent positions, provides that

1

where a party assumes a certain position, in a legal proceeding, and succeeds in maintaining that position, he [or she] may not thereafter, simply because his [or her] interests have changed, assume a contrary position."[1]  "The doctrine rests upon the principle that a litigant should not be permitted to lead a court to find a fact one way and then contend in another judicial proceeding that the same fact should be found otherwise."[2]  Application of this doctrine is necessary because parties "should not be permitted to play fast and loose with the courts by advocating contrary positions in different legal proceedings."[3]

> **B.    Until This Opposition, Everything Kobayashi Did Was Premised On the Termination of the License Agreement in September 2000.**

Until this fact no longer suited its case, Kobayashi unmistakably declared, in its original complaint and in a later opposition to a motion to dismiss, that the License Agreement was terminated in September 2000.  In the original complaint, Kobayashi acknowledged that the License Agreement was terminated. For example:

- Kobayashi's original complaint was for patent infringement going all the way back to September 27, 2000—the date that Papertech sent the Termination Letter. [Complaint ("Complaint"), filed December 27, 2007, ¶ 22 ("Since about September 27, 2000, Papertech has . . . infringed upon Kobayashi's Patented Technology . . .").]

- Kobayashi alleged, "*After termination of the License Agreement*, Papertech continued and continues to this day to make . . . Kobayashi's Patented Technology." [*Id*. ¶ 15 (emphasis added).]

- Kobayashi summarized Papertech's actions, including: "*2000*: Attempted to unilaterally terminate the License Agreement but failed to give proper notice." [*Id.* ¶

---

[1]  *Mikkelson v. Kessler*, 50 A.D.3d 1443, 1444, (N.Y.A.D. 2008) (quotes omitted).
[2]  *Environmental Concern, Inc. v. Larchwood Const. Corp.*, 101 A.D.2d 591, 593 (N.Y.A.D. 1984) (quotes and ellipses omitted).
[3]  *Perkins v. Perkins*, 641 N.Y.S.2d 396, 397 (1996).

2

19 (emphasis added).]

Then, in Kobayashi's opposition to Papertech's motion to dismiss Kobayashi's original complaint for patent infringement, Kobayashi again staked its arguments on the termination. For example:

- Kobayashi claimed: "On or about September 27, 2000, Defendant unilaterally terminated its License Agreement." [Kobayashi Ventures' Brief in Opposition to Papertech's Motion to Dismiss/Transfer ("Virginia Opposition") at p. 1.]

- Kobayashi emphasized that "Defendant has no license." [*Id.*]

- And Kobayashi insisted that "Defendant has no surviving rights under any license." [*Id.*]

- Kobayashi even emphasized that the termination was *undisputed*, titling one section: "DEFENDANT'S UNDISPUTED TERMINATION OF THE LICENSE AGREEMENT." [*Id.* at 7.]

- Kobayashi concluded, "As the natural and logical consequence of Defendant's termination of the License Agreement, none of the terms of the License Agreement Survive." [*Id.* at 13.]

As demonstrated by the above allegations, Kobayashi both implicitly and explicitly admitted the termination of the License Agreement. Explicitly, Kobayashi stated this fact over and over again. Implicitly, Kobayashi's claim of patent infringement acknowledged a termination of the License Agreement because *there can be no infringement if a license exists*.[4] But Kobayashi also took this one step further, and sued Papertech for damages from September 27, 2000 forward. [Complaint, ¶¶ 22, 24.] This date was no accident—the only significance to the date September 27, 2000 is that it was the date Papertech sent the Termination Letter.

---

[4] *See United Mfg. & Service Co. v. Holwin Corp.*, 187 F.2d 902, 905 (7th Cir. 1951) ("It is also clear that while the license agreement is still in effect the owner of the patent cannot sue for infringement.").

3

Indeed, Judge Doumar adopted Kobayashi's factual position in its written order transferring venue, finding "On September 27, 2000, Papertech provided 30 days notice to Champion International of its intent to terminate the license agreement." [Order Transferring Case to Southern District of New York at p.1 ("Transfer Order").][5]

As Kobayashi continuously argued that the Termination Letter ended the License Agreement, and succeeded in convincing the earlier court to adopt Kobayashi's factual position that the Termination Letter was sent, judicial estoppel should preclude Kobayashi from its asserting its new argument that its predecessor in interest did not receive the Termination Letter. Kobayashi should not be permitted to "play fast and loose" with this Court.[6]

### C. Declaration of Inger H. Eckert Is Ineffective To Combat Earlier Admissions.

The only item Kobayashi puts forth to support its argument that the Termination Letter was never received is the declaration of Inger H. Eckert, who purports to be the Chief Counsel, Intellectual Property for International Paper.[7] This declaration is transparently insufficient to "verify" that Champion or International Paper never received the Termination Letter. There is no statement related to how long Mr. Eckert worked for International Paper; there is no claim that he was employed by Champion or International Paper in September 2000; there is no statement to show that he was responsible for the License Agreement or the Champion patents;

---

[5] Judge Doumar reserved for this Court the issue of whether the license agreement applied to the forum selection dispute. [Transfer Order, p. 11.]

[6] *See Festinger v. Edrich*, 32 A.D.3d 412, 413 (N.Y.A.D. 2006) (plaintiff previously claimed at a criminal sentencing hearing that he had no assets, but in the current case claimed an interest in his sister's property—"application of the doctrine [of judicial estoppel] also was essential to avoid a fraud upon the court and a mockery of the truth-seeking function."); *Perkins v. Perkins*, 226 A.D.2d 610 (N.Y.A.D. 1996)(former husband attempted to assert an interest in his former wife's property, but the court applied judicial estoppel because he had claimed just the opposite in deposition testimony in another case—he "should not be permitted to play fast and loose with the courts by advocating contrary positions in different legal proceedings.").

[7] Kobayashi also states throughout its opposition that the Termination Letter was not received until 2007, but cites no allegation in the First Amended Complaint in support, and provides no fact or evidence in support thereof. [Opposition pp. 4, 7, 9.]

there is no statement to show he was related in any way to the transfer of "File Materials" to Jacklin (the entity that allegedly received assignment of the Champion patents from International Paper). Indeed, Mr. Eckert's declaration merely asserts that, upon reviewing the file at some unknown time, he did not see the Termination Letter. Mr. Eckert's declaration must be assessed in stark contrast to Kobayashi's claims, detailed above, repeatedly and emphatically asserting the termination of the License Agreement.

### D. Papertech's Termination Letter was Sufficient to Terminate the Contract.

In its opening brief, Papertech cited *Ives v. Mars Metal Corp.*, 196 N.Y.S.2d 247, 249 (1960) and *U.S. Broadcasting Co. Corp. v. National Broadcasting Co., Inc.*, 439 F.Supp. 8, 9 (D.C. Mass. 1977) (applying New York law) for the proposition that "[w]here actual notice of termination has in fact been given, the form is of little import, and the fact that notice was sent to [the wrong person] would not invalidate its effect."[8] Kobayashi's primary response was that it had no *actual* notice of termination. [Opposition Brief at 9-10.] As Kobayashi admitted elsewhere that the Termination Letter was effective, its new contention that it did not receive actual notice should be estopped. Accordingly, this Court should apply the well-established principle that actual notice of termination is sufficient to terminate a contract despite any purported deficiencies in the addressee or form of the Termination Letter.[9]

Moreover, Kobayashi's argument that the Termination Letter failed to comport with the License Agreement is belied by the Agreement's plain language. The License Agreement states: "LICENSEE shall have the right to terminate this Agreement upon thirty (30) days prior written notice to CHAMPION to such effect, in which event, this Agreement shall terminated on the

---

8   *Ives*, 196 N.Y.S. 2d at 249.
9   Kobayashi alleges that the License Agreement was terminated on July 28, 2008, but that allegation is found nowhere in their complaint, nor would this court have to credit such a legal conclusion even if it where. *See Leeds v. Meltz*, 85 F.3d 51, 53 (2nd Cir. 1996) ("While the pleading standard [for a motion to dismiss] is a liberal one, bald assertions and conclusions of law will not suffice.").

5

thirty-first (31st) day after sending such notice." [FAC, Exh. 3 at ¶ 16.3.] In paragraph 21.1 it states, "It shall be *sufficient* giving any notice . . . if the party giving the same shall deposit a copy thereof in the Post Office in a registered or certified envelope" and addressed to Champion International. The key word there is "sufficient"—it does not say *necessary*. The only *requirement* under the contract to terminate is to send written notice with 30 days advanced warning. Papertech complied.

Since Kobayashi should be estopped from arguing that it never received the Termination Letter, and since the Termination Letter complied with the License Agreement (but was legally sufficient even if it failed to do so), this Court should find that the Agreement terminated in 2000 and that Kobayashi's contract claims are time barred.

## III. EVEN IF THE LICENSE AGREEMENT WAS STILL IN EXISTENCE, THE STATUTE OF LIMITATIONS BARS THIS LAWSUIT.

### A. Even if the Termination of the License Agreement Were Somehow Wrongful, It Triggered the Statute of Limitations for the Entire Contract.

In its opening brief, Papertech cited *Ashfar v. Procon*, 442 F.Supp. 887 (S.D.N.Y. 1977), and *Ediciones Quiroga, S.L. v. Fall River Music, Inc.,* 1998 U.S. Dist. LEXIS 19039, 1998 WL 851574 (S.D.N.Y. 1998) for the proposition that an attempted termination combined with a material breach—even if the termination was wrongful—triggers the statute of limitations on the *entire* contract. Kobayashi attempted to distinguish these cases by alleging that they "involve[] a clear, proper, and unequivocally communicated notice of termination of the underlying agreement—in contrast to this case." [Opposition at 12.] But, the present case also involves an unequivocal notice of termination by the Termination Letter, as previously admitted by Kobayashi. [*See, e.g.,* Virginia Opposition, p. 7 ("DEFENDANT'S UNDISPUTED TERMINATION OF THE LICENSE AGREEMENT.")]

Kobayashi cited several cases for the proposition that a material breach does not

6

necessarily terminate a contract, but remains in effect and gives rise to ongoing breaches. But none of the cases cited by Kobayashi involved an attempted termination of the agreement, as is the case here, and as was the case in *Ashfar* and *Ediciones Quiroga*. The latter cases demonstrate that the attempted termination does not permit the non-terminating party to simply ignore the attempted termination and hold the other party to their obligations. Rather, those cases require the aggrieved party to sue on the entire contract within six years of the breach. Those cases are fully analyzed in Papertech's opening brief. Each of the cases cited by Kobayashi is distinguishable because they did not involve an actual or attempted termination. On the contrary, in each of those cases all parties acted as though the contract was fully in force, and the plaintiffs were generally in the dark about defendant's breach.

For example, Kobayashi cites *Guilbert v. Gardner*, 480 F.3d 140 (2nd Cir. (N.Y.) 2007), where plaintiff sought pension contributions from his employer who repeatedly, falsely assured him that the contributions were being made. The court held that "Plaintiff's claim that Defendants breached that obligation within six years of the commencement of this action is timely."[10] The defendants shirked their duty *and* repeatedly assured the plaintiff his benefits were "'taken care of,'" so the parties' ongoing duties gave rise to successive breaches.[11] This is converse to the present case where Papertech's termination and breach was known to all. The cases that Kobayashi string-cites are all similar and the running theme is that there was only a simple, unannounced breach, as opposed to one party declaring an end to the contract.[12]

---

[10] *Id.* at 150.
[11] *Id.* at 143.
[12] *See Beller v. William Penn Life Ins. Co. of N.Y.*, 778 N.Y.S.2d 82 (2004) (insurance company raised rates without informing customers that it did so in contravention of the contract—neither party attempted termination or in any manner treated the contract as ended); *Stalis v. Sugar Creek Stores, Inc.*, 744 N.Y.S.2d 586 (2002) (unknown to plaintiff, defendant breached contractual duty—which was explicitly a continuing duty—to render sewage system code compliant; neither party attempted termination or in any manner treated the contract as ended); *Airco Alloys Division, Airco Inc. v. Niagara Mohawk Power Corp.*, 430 N.Y.S.2d 179 (1980) (plaintiff sued as third-party beneficiaries to enforce contract to sell electricity; court held there were insufficient facts to determine when a breach, if any, occurred; neither party attempted termination or in any manner treated the contract as ended). It must also be noted that

7

Next, Kobayashi cites several non-New York cases stating that, when faced with repudiation, the aggrieved party may elect to either terminate or affirm the contract. The key point of distinction in those cases is that they simply involved one party saying they refused to perform; they did not involve a termination clause. For example, in *St. Paul Plow-Works v. Starling*, 140 U.S. 184 (1891), the defendant attempted to repudiate a licensing contract, but the court explicitly noted that "The contract has no provision for its termination or its renunciation."[13] In the absence of such a provision, defendant's refusal to perform gave rise to an election for plaintiff. And in *McDonnell Douglas Corp. v. United States*, 182 F.3d 1319 (1999), neither party even attempted repudiation of the contract. The plaintiff simply materially breached, and the government elected to terminate the contract.[14] Finally, in *Cities Service Helex, Inc. v. US National Helium Corp*, 543 F.2d 1306 (1976), one party sent a termination letter, but *both* parties thereafter continued to operate under the contract, demonstrating that no termination actually occurred.[15] Each of the above cases stands in contrast to the current case, where Papertech invoked a termination clause and made it clear that the contract was over.

Moreover, to the extent that Kobayashi and its predecessors had an election, their conduct demonstrates that they elected to terminate the contract. For example, Kobayashi's patent infringement claims in its original complaint are patently inconsistent with the existence of a License Agreement.[16] By seeking infringement damages back through September 27, 2000—the

---

*Stalis* and *Airco Alloys Division* did not even result in holdings on statute of limitations. In *Stalis*, the court simply cited general legal principles and found it was unable to resolve the statute of limitations issue on summary judgment. *Stalis*, 744 N.Y.S.2d at 588. In *Airco Alloys Division*, the court held it was not yet possible to determine the issue of accrual. *Airco Alloys Division,* 430 N.Y.S.2d at 186.

[13]     *Id.* at 195.
[14]     *Id.* at 1327.
[15]     *Id.* at 1314.
[16]     See *Royal Industries v. St. Regis Paper Co.*, 420 F.2d 449, 450 (9th Cir. 1969) ("Royal cannot successfully maintain its patent infringement . . . action unless St. Regis' license was effectively terminated."); *United Mfg. & Service Co. v. Holwin Corp.*, 187 F.2d 902, 905 (7th Cir. 1951) ("It is also clear that while the license agreement is still in effect the owner of the patent cannot sue for infringement.").

date that Papertech sent the termination letter—Kobayashi unequivocally demonstrated that an election was made to treat the contract as terminated. [Complaint, ¶ 22.]

Also, Kobayashi's and its predecessors' silence demonstrates that they elected to terminate the contract. If they regarded the License Agreement as continuing, it defies reason that they would say *nothing* in the face of seven-plus years of consistent non-payment. Indeed, it was not until International Paper purchased the Champion patents and obtained therewith the License Agreement through a merger that someone mentioned payments to Papertech. [FAC ¶ 14.] But when Papertech reminded International Paper that the License Agreement was terminated, there was another three years of silence until, *again*, a new entity purchased the Champion patents from International Paper and was assigned all of the license agreements relating thereto, including the License Agreement even though it had been terminated almost seven years before. And even when that happened, Kobayashi immediately sued for *infringement* and emphatically insisted that the License Agreement had been terminated.

### B. The Policy Behind Statute of Limitations Further Supports Its Application.

"[S]tatutes of limitations are designed to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost."[17] They also serve the function of "giving repose to human affairs."[18] Another court described its policies as "fairness to defendant and society's interest in adjudication of viable claims not subject to the vagaries of time and memory."[19]

These policies further support a ruling that Kobayashi's lawsuit is barred by the statute of limitations. Papertech terminated the License Agreement nearly eight years ago. As even Kobayashi has recognized, Papertech experienced significant growth during that time by aggressively expanding its operations. All along, Papertech assumed in the face of its termination

---

[17] *Nussenzweig v. diCorcia*, 9 N.Y.3d 184, 188 (2007) (quotes omitted).
[18] *Brunner v. Town of Geneseo*, 780 N.Y.S.2d 880, 882 (2004).
[19] *McCoy v. Feinman*, 99 N.Y.2d 295, 306 (2002).

9

of the License Agreement and Kobayashi's predecessors' total silence that it need no longer account for any royalties under the License Agreement. After all, even if a termination letter had never been received, it is only reasonable that Kobayashi's predecessors would say *something* about years of missed reporting and payments before seeking millions of dollars in damages. Papertech respectfully requests that this Court find this case to be precisely the sort of situation that the statute of limitations was designed to avert, and, accordingly, find that this lawsuit is time barred.

### IV.  CONCLUSION

Throughout this lawsuit, Kobayashi has engaged in a reckless and ill-conceived litigation strategy.  Initially, Kobayashi failed to secure the prerequisite rights to sustain a patent infringement claim. Now Kobayashi ignores irrefutable facts and its own prior contrary arguments, both are fatal to its breach of contract claim.  For all of the foregoing reasons, Kobayashi's First Amended Complaint should be dismissed with prejudice.

Dated: August 11, 2008
New York, New York

Respectfully submitted,

**BAKER & HOSTETLER LLP**
By: s/ Oren J. Warshavsky
Oren J. Warshavsky, Esq. (OW 9469)
Jason S. Oliver, Esq. (JO 1676)
45 Rockefeller Plaza
New York, New York 10111
Phone: (212) 589-4624
Facsimile: (212) 589-4201
owarshavsky@bakerlaw.com

*Attorneys for Defendant*
*PT Papertech, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ x

KOBAYASHI VENTURES, LLC,

        Plaintiff,

-against-

PAPERTECH INC.,

        Defendant.

------------------------------------ x

08 CIV. 04450 (LAP)

*Document Filed Electronically*

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 11th day of August 2008, a true and accurate copy of the foregoing Reply Brief in Further Support of Defendant's Motion To Dismiss For Failure to State a Claim Pursuant To Federal Rule Of Civil Procedure 12(B)(6), and in the Alternative for Summary Judgment Under Federal Rule of Civil Procedure 56, was served via ECF notification to the following:

    Jeffrey Martin Schwaber
    Stein, Sperling, Bennett, De Jong,
    Driscoll & Greenfeig, PC
    25 West Middle Lane
    Rockville, MD 20850
    *Counsel for Plaintiff*
    *Kobayashi Ventures, LLC*

by: _____
        Jason S. Oliver (JO 1676)